E. REGENSBURG & SONS v. JUAN F. PORTUONDO CIGAR MFG. CO.

(Circuit Court of Appeals, Third Circuit. December 29, 1905.)

No. 15.

1. PATENTS—NOVELTY—CIGAR BAND.
   The Regensburg patent, No. 715,512, for a cigar band having one end wider than the other to facilitate its application to the cigar and to prevent the narrow end, which is pasted over the other, from adhering to the wrapper, is void for lack of novelty, in view of the prior art.

2. TRADE-MARKS—VALIDITY—CIGAR WRAPPER.
   There cannot be a valid trade-mark in a cigar band, the only characteristics of which are that it is wider at one end than the other and that it is of a brown color with white lettering thereon.

3. SAME—UNFAIR COMPETITION.
   Unfair competition cannot be predicated upon the use by defendant of a plain brown cigar band with white lettering thereon, because it is similar in color and shape to one previously in use by complainant, where there is no evidence of an intention to imitate, and the only characteristic thing about either band is the name thereon, in which the two are dissimilar, both in the name and style of lettering.

   [Ed. Note.—Unfair competition, see notes to Scheuer v. Miller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 136 Fed. 866.

Arthur V. Briesen, for appellant.

C. Andrade, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge.  The material facts in this case are sufficiently set forth in the opinion of the learned judge of the court below, in which we concur, and which we quote in full as follows:

J. B. McPHERSON, District Judge.  The complainant, a New York corporation, engaged in the manufacture and sale of cigars, seeks to restrain the defendant from using a certain kind of band around its cigars, on several grounds:

1.  Because the defendant's band infringes the complainant's patent for a similar device.

2.  Because the defendant's band infringes the complainant's trade-mark, namely, the same band for which the patent was taken out.

3.  Because, in view of the prior use of the complainant's band the defendant is guilty of unfair competition by the use of its own device.

Both bands are dark brown, differing very little from the color of a cigar wrapper, and the lettering upon both is white.  The following figure shows the complainant's band:

And the defendant's band, which differs in shape and lettering, is shown upon the following reproduction:

1.  The complainant is now the owner, by assignment, of patent No. 715,-512, granted to M. Regensburg on December 9, 1902, upon an application filed on March 19th of that year.  The subject of the invention is an improvement in "cigar bands made of paper or like material, one end of which is provided with an adhesive substance, so as to adapt it to be pasted upon the other end of the band."  The object of the invention is stated to be "to provide an improved cigar band of the above-indicated class, which' will be so constructed as to protect the cigar wrapper from contact with the adhesive portion of the band, and to materially reduce the time and labor necessary for applying the band to a cigar."  The specification describes the band in the following language, and recounts the advantages that may be expected therefrom:

"The improved cigar band, as shown in detail in Fig. 2, consists of a strip of paper or like flexible material, A, which at one end, A³, is narrow and provided with a coating, A¹, of any adhesive, such as mucilage, while that portion which the said adhesive is adapted to come when the band is folded around the cigar, as shown in Fig. 1, is materially wider than the portion carrying the adhesive, A¹.  This wide portion, which may be tapering, as shown, is indicated at A², * * *, indicating two acute-angled side pieces of this tapering portion.  In the particular construction, shown in the drawings the adhesive, A¹, is located at the extreme end of the band, and the enlargement, A², is likewise located at one end of the band.  I desire it to be understood, however, that such location is not absolutely essential, the main object being to provide an enlargement at that portion of the band which comes in contact with the portion carrying the adhesive, A¹.

"In applying my improved cigar band the wide portion, A², is first placed upon the wrapper of the cigar, and then the band is folded around the cigar, so as to bring the portion with the adhesive, A¹, upon the wide portion, A².  The connection is made in the usual way by moistening the adhesive

"A material advantage of constructing the cigar band as above described resides in the fact that there is no danger of pasting the portion with the adhesive even partly upon the cigar wrapper, since on account of the enlargement, A². it is not absolutely necessary to place the adhesive or coated end in an exactly central position.  This of course also enables an operator to perform the work of applying the bands much more rapidly and with a certainty of satis-

factory results. With the adhesive cigar bands as generally made there is always some danger of pasting the adhesive portion of the band partly on the cigar wrapper, and the result is that the mucilage or other adhesive may impart an unpleasant flavor to a portion of the cigar. Besides, since a portion of the band adheres to the wrapper there is danger of injuring the wrapper when removing the band. All this is avoided by my invention, and as there is no need of exercising great care in pasting the adhesive end actually upon the center of the other end portion of the band, the operation can be performed much more rapidly than with the usual style of cigar band.

"Another advantage of my improved form of cigar band is that it may be very rapidly torn off a cigar without injuring the wrapper. This will be clearly shown by reference to Fig. 1. Those portions of the band which project sidewise from the adhesive portion, $A^1$, can be readily taken hold of and lifted from the wrapper, so as to enable the user to tear the band without any danger of damaging the wrapper."

The claim is as follows:

"As a new article of manufacture a laterally flexible paper cigar band one end of which is broader than its body and than the other end, the narrow end carrying adhesive substance on its inner side, so that it may overlap the broad end and be secured thereto, the broad end allowing the adhesion with the narrow end within a considerable radius and furnishing projections extending laterally for detaching or destroying the band."

Evidently, under this claim, nothing is material except the shape of the band. Its color is of no importance, and neither is the width of its body. In the complainant's argument, much stress was laid upon the words, "laterally flexible," in the claim, and it was insisted that this phrase necessarily implied that the body of the band must be very narrow, because a wide band cannot be "laterally flexible." I think it would be a fair reply to say, that the difference in lateral flexibility between a wide band and a narrow band is comparative only, and that not a word is said in the specification about the narrowness or width of the body of the band. All that is emphasized in the specification is the capital importance of having one end narrower than the other; but, if this difference in width exists, the description in the specification, and the claim, are both satisfied, whether the band be an inch wide or only a quarter of an inch. But without laying any weight upon this consideration, it seems clear to me that the patent is invalid for want of novelty. There are no prior patents, but there is clear and satisfactory evidence that narrow bands, and bands having one end narrower than the other, had been in public use at least as early as 1895, 1898, and 1899. I shall not repeat the evidence upon this point, but content myself by referring to what the witnesses have said concerning the Seidenberg, the Marguerite, and the Tom Keene bands. In addition to these private bands, there were several varieties of public bands—that is, such as could be bought by any dealer who desired them—whose ends differed in width, and had been used as early as 1898. These bands were publicly used to secure the same advantages that are described in the patent, and while they may perhaps have lacked something of the efficiency that is to be found in the complainant's band, still they disclose the essential idea, and, in my opinion, therefore, the patent cannot be sustained.

2. The trade-mark to which the complainant lays claim is the band described in the patent, to which is added the brown color and the white lettering displayed thereon. The mark is not registered, and its common-law validity need not, I think, be discussed. Assuming that the field was clear for its adoption, and conceding that it was put into use in June, 1900, while the defendant's band was adopted in 1903, I am unable to see sufficient evidence of infringement, even if the complainant's mark be given its widest lawful scope. Certainly the color alone could not be appropriated by the complainant as a trade-mark, nor the shape alone, nor the material alone; and even the combination of these three elements could not make a valid trade-mark, because neither singly nor in combination do they point to the complainant as the source from which the goods are derived. Something more is needed to supply this defect, and this is found, if at all, in the lettering upon the

band.  But, after this is added, and assuming that a valid trade-mark has now been produced by combining the four elements referred to, it remains to inquire whether the defendant's band infringes; and upon this point, I think that an inspection, which need not be minute, shows plainly that the differences are apparent to an ordinarily careful observer.  The defendant's band contains nothing but a name in script, evidently imitating an autograph, while the complainant's band contains a firm name in block letters, the words "Trade-mark, Pat. Dec., 1902," and the initials "E. R. & S."  It is likely enough that a near-sighted man, or a man with impaired vision, unaided by glasses, or a man in so much of a hurry as to be unwilling to stop for a careful look, might mistake one band for the other, but these classes may be disregarded in applying the test of similarity.  Certainly an ordinarily intelligent man, able to see and to read, and willing to take a few seconds' time to examine the two bands, would inevitably discover that one of the banded cigars was made by the complainant and the other by the defendant.  And if this is so, it is clear that the charge of infringement has not been established.  The complainant's evidence concerning confusion of the two bands is too slight to support the charge.

3. The averment of unfair competition has still less to support it.  The defendant's band was selected with no reference to the complainant's, and with no intention to imitate it, even remotely.  In point of fact, as already stated, it does not resemble it so closely as to deceive a person of ordinary intelligence and powers of observation, and, so far as they have two features in common—a brown color and white lettering—the resemblance was not intended, and was not adopted with any design upon the complainant's trade.

A decree may be entered dismissing the bill at the costs of the complainant.

There is little to add to the findings of fact and conclusions of law set forth in this opinion.  It is perfectly clear that complainants' claim, that they are entitled to the exclusive use, as a trade-mark, of a cigar band made of brown colored paper, of a peculiar shape by being wider at one end than at the other, and lettered in white letters, as illustrated in the specimen attached to their bill, cannot be maintained.  Such appropriation, if sustained, would extend to any brown band of about the width shown by complainants' specimen, on which the true source or origin of manufacture or ownership is printed in white letters.  No claim is made to the distinguishing feature of the name "E. Regensburg & Sons," printed on the band of complainants.  The defendant has used a narrow brown band, with the name "Juan F. Portuondo" in white letters.  The white lettering on complainants' band are block letters, while those on defendant's are script.  There is also other lettering on complainants' band, while there is no other lettering on defendant's band, as pointed out by the learned judge of the court below.  These bands are really labels upon the cigars, containing the name of the manufacturer.  It is elementary that size and color of a label cannot be appropriated as a trade-mark.  The principles of morality underlying the law, both of trade-mark and unfair competition, do not countenance so absurd a proposition as that a person may not designate the origin or ownership of the goods he sells, by printing his name upon a label attached to them.  In this case, there is nothing peculiar in the form of the label.  It is a straight band, of a width suitable to hold the name, which is printed in white letters because the band is dark in color.  The distinguishing thing about the label is the name, and this sufficiently distinguishes the defendant's from the complainants' label.  That one end is made wider than the other is immaterial, as the ends do not show as the cigars

are laid in the box. Any person turning the cigar over and inspecting it closely enough to observe this peculiarity in the shape of one end, could hardly fail to notice the name on the label. The label, then, of both complainants and defendant is of the usual and obviously convenient shape for the purpose of displaying the name placed upon it. There is no other mode of labeling a cigar, that is as convenient or so obvious as a straight plain band of suitable width to encircle a cigar and hold the name of the owner or producer. A straight white band of suitable width, with the name of the maker of the cigar in black lettering, might as well be claimed as a trademark. No such appropriation of obvious and simple methods of advertising one's name on his productions, can be appropriated.

Neither is there anything in the shape, color or size of this band to imply such fraudulent intent as would constitute unfair competition. There is no direct testimony disclosed by the record of such intention, nor any from which other than honest competition can be inferred.

That there was no patentable novelty in the band, as claimed in complainants' patent, seems to us as clear.

The decree of the court below is affirmed.