## NEWCOMER & LEWIS v. SCRIVEN CO.

(Circuit Court of Appeals, Sixth Circuit. February 23, 1909.)

No. 1,847.

1. TRADE-MARKS AND TRADE-NAMES (§ 17*)—MARKS—SUBJECTS OF OWNERSHIP —COLOR.

Color, except in connection with some definite arbitrary design, such as when impressed upon a circle, star, cross, or other figure, or employed in definite association with some characteristics which serve to distinguish the article as made or sold by a particular person, is not the subject of monopoly as a trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 20; Dec. Dig. § 17.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 3*)—ORIGIN AND ADOPTION OF MARK.

The right to an exclusive trade-mark can only be acquired by its adoption for the very purpose of pointing to the origin or ownership of the article to which it is attached, and it must be designed to indicate the manufacturers or sellers, and to distinguish the article from like things made or sold by others.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 5; Dec. Dig. § 3.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 17*)—MARKS SUBJECT OF OWNERSHIP—COLOR.

Complainant *held* to have no trade-mark right in the yellow or buff color of a strip inserted along the seams of men's drawers, which is the natural color of Egyptian yarn, originally used in making the elastic seam of drawers made under a patent which has expired.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 20; Dec. Dig. § 17.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 3*)—MARKS OR NAMES SUBJECTS OF OWNERSHIP—DESCRIPTIVE WORDS.

The words "Elastic Seam," used to denote men's drawers having a knitted strip inserted along the seams, are descriptive, and not subject to monopoly as a trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 6; Dec. Dig. § 3.*

Arbitrary, descriptive, or fictitious character of trade-marks and trade-names, see note to Searle & Hereth Co. v. Warner, 50 C. C. A. 323.]

5. TRADE-MARKS AND TRADE-NAMES (§ 93*)—UNFAIR COMPETITION—EVIDENCE TO ESTABLISH.

Evidence *held* insufficient to establish unfair competition by intentionally representing goods made by others as those of complainant, or by actually deceiving any purchaser.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 93.*]

Appeal from the Circuit Court of the United States for the Eastern District of Tennessee.

This is a bill to enjoin infringement of complainant's trade-mark and trade-name in the manufacture and sale of men's drawers, and to restrain an alleged unfair competition in the sale of men's drawers, not made or sold by complainant, as and for drawers made and sold by complainant. The complainant is a corporation organized under the laws of West Virginia, but carrying on business in the city of New York. The defendants are copartners, carrying on business at Knoxville, Tenn.

The bill avers that the complainant has since 1891 been engaged in the business of making and selling men's drawers, and "that for the purpose of more clearly distinguishing the goods of its manufacture from those of other manufacturers, it applied to the men's drawers made by it certain peculiar and distinguishing features, to wit a buff or yellow colored strip down each side and the back thereof, said buff or yellowish colored strip extending down from the waistband to the ankles, being so conspicuous as to readily distinguish such drawers from others sold by competitors in the market; the remainder of said garment being of a color contrasting with that of said strip and usually white. * * * The use of the said buff or yellowish strip was particularly, arbitrarily, and solely for the purpose of identifying your orator's product. * * * That complainant also applied to the said drawers and the boxes in which they were sold and in the advertisements of said drawers the further distinctive and distinguishing marks, appellations and symbols, to wit, the words 'Elastic Seam,' or 'Scriven's Elastic Seam.' * * * That the said buff or yellowish colored strips and the said words 'Elastic Seam' and 'Scriven's Elastic Seam,' as applied to men's drawers, and used therewith, came to be recognized by dealers therein and the public generally as indicating and distinguishing the goods of the manufacture of your orator, which were known as 'Scriven's Drawers,' and that dealers and consumers relied upon the said buff or yellowish colored strips and upon the said words 'Elastic Seam,' or 'Scriven's Elastic Seam,' as indications that the goods were of the manufacture of your orator." It is then charged that the defendants are engaged in selling "men's drawers not made by or for your orator, which have been made in fraudulent imitation of your orator's said product; * * * that is to say, the said defendants have made or caused to be made or procured, and caused to be offered for sale and sold, men's drawers having the body portion thereof white and down the sides and back a buff or yellowish strip of substantially the same length, width, and color of strip as the buff or yellowish colored strips made use of by your orator, and have advertised and sold, or caused to be advertised and sold, said imitation drawers as Scriven's Elastic Seam Drawers, * * *" and "have caused those to whom they sell the said drawers to believe that the said articles are Scriven's drawers, made by your orator, deceiving the public and securing to the said defendants the profits. * * *"

The answer puts in issue all the material facts upon which the complainant seeks relief. It asserts that the complainant originally made and sold the elastic seam drawers, described in the bill and the subject of this controversy, under a patent, being No. 243,498, issued January 28, 1881, to one C. A. Brown, for certain improvements in undergarments, which said patent has long expired. They admit that they deal in men's drawers, and that they buy and sell the drawers made by the complainant, as the Scriven's elastic drawers, at 75 cents per pair; that they also buy from jobbers a style of drawers having the elastic seam feature of the Brown patent and in a general way resembling the garment made and sold by the Scriven Company, but deny that they represent or sell them as or for garments made or sold by the complainant, but as drawers like the Scriven drawers in style and quality, asking for the same only 24 cents per garment, and that customers are enabled and offered a choice, without deception. The answer denies that the Scriven Company ever adopted the said "buff or yellowish" strip for the purpose of indicating the origin, or that they adopted the color as a mark of origin; but, in fact, the color of the strip is the natural color of the unbleached cotton used in the fabric composing the strip. They deny that the term "'Elastic Seam' was adopted as a term to indicate origin, but was adopted and used as words descriptive of the character and style of the drawers so marked and advertised."

Upon the pleadings and evidence there was a decree in accordance with the prayer of the bill.

L. M. G. Baker, for appellants.

G. W. Case, Jr., for appellee.

Before LURTON and SEVERENS, Circuit Judges, and KNAPPEN, District Judge.

LURTON, Circuit Judge (after stating the facts as above). The characteristic feature of the men's drawers here in question is that a strip or seam of an elastic fabric is inserted down the sides and back. This is the feature covered by a patent to C. A. Brown, which expired in 1898. We insert below Figure 2 from that patent:

*Fig. 2.*

The specifications of that patent say that the parts marked "A" are made of woven fabric, while the parts marked "B" are made of knitted fabric. The knitted fabric may be either sewed to "or inserted within the garment, or may be loosely woven or worked in the formation of the drawers material." The first claim of the patent was for the combination in undergarments of the woven body fabric, A, and the knitted insertions, B, when constructed and arranged substantially as described. Down to 1898 only the Scriven Company, as assignees of this patent, could make men's drawers having such an elastic strip or seam down the sides or back. Since that time the monopoly has ceased, and the public are at liberty to use the method of the patent. Neither the color nor the material of this elastic seam was an element of the patent, nor does it appear from any competent evidence that this inserted strip or elastic fabric has always been of the same shade or color. There is evidence that for many years that strip has been made from the yarn of Egyptian cotton, and that the so-called "buff or yellowish" color is the undyed, natural color of the grade of unbleached cotton from which the fabric is made. The averment of the bill that the makers of these elastic seam drawers adopted the use of said buff or yellowish colored strip "particularly, arbitrarily, and solely for the purpose of identifying your orator's product" is not borne out by the evidence. There is some hearsay and some opinion evidence which tends to show this, but no sufficient evidence of any such distinct purpose or object. The long elastic Egyptian fiber was suitable for the elastic strip, but that the color of the commercial variety of such cotton was the cause of its adoption is not established.

Color, except in connection with some definite, arbitrary design, such as when impressed upon a circle, star, cross, or other figure, or employed in definite association with some characteristics which serve to distinguish the article as made or sold by a particular person, is not the subject of monopoly as a trade-mark. Diamond Match Company v. Saginaw Match Company, 142 Fed. 727, 74 C. C. A. 59; Regensburg

v. Portuondo Cigar Mfg. Company, 142 Fed. 160, 73 C. C. A. 378; Leschen Sons' Rope Company v. Broderick & Bascom Rope Company, 201 U. S. 166, 26 Sup. Ct. 425, 50 L. Ed. 710. In a very clear and satisfactory opinion by Judge Morris, of the Maryland district, this conclusion was reached about this very contention. Scriven Company v. Morris (C. C.) 154 Fed. 914. The color of this seam or strip is not artificial, but the natural color of the material used in making the fabric. Neither was it impressed upon any particular design which in itself was the subject of appropriation as a trade-mark. The patentable feature of the men's drawers of the Brown patent was the insertion of a strip of elastic fabric between the seams of the garment. When the patent expired it was open to all the world to insert just such a seam. Singer Mfg. Company v. June Mfg. Company, 163 U. S. 185, 16 Sup. Ct. 1002, 41 L. Ed. 118.

The right to an exclusive trade-mark can only be acquired by its adoption for the very purpose of pointing to the origin or ownership of the article to which it is attached, and must be designed to indicate the manufacturers or sellers, and to distinguish the article from like things made or sold by others. This elastic seam, having the natural color of the cotton yarn from which the fabric was made, was inserted in men's drawers made by the Scriven Company, because such an inserted piece constituted a structural difference constituting the invention covered by the monopoly of the patent. As assignees of the patent, no one else could insert such an elastic seam without infringement. But when the patent expired the public was free to use it. To give that inserted strip, with or without its inartificial color, the effect of a trade-mark thereafter would be, in effect, to extend the monopoly of the patent. That others may make and sell drawers constructed according to the design of the patent is not denied; the contention being that the elastic seam shall not be of the color used by Scriven. But, as that color is not an artificial color, Scriven has no monopoly. The color of the strip in the drawers sold by the defendants has not been artificially produced, but is shown to be the natural color of undyed and unbleached cotton yarn from which the strip is made. We may therefore dismiss the claim that the Scriven Company has established a trade-mark in the color of the inserted piece.

Neither is there anything misleading in the use of the inserted piece made from undyed cotton yarn. The evidence shows beyond dispute that the Scriven Company stamped every garment with the words "Scriven's Drawers," "Scriven's Elastic Seam Drawers," or "Scriven Company," and sometimes with more than one of these marks of origin. So long as others refrain from the use of the word "Scriven" in such a sense as to imply that the garment bearing that name was made or sold by Scriven or the Scriven Company, and from representing by advertisement or otherwise that articles not made or sold by the Scriven Company had been made or sold by the Scriven Company, that company has no right to complain. In the case of Coats v. Merrick Thread Company, 149 U. S. 562, 572, 13 Sup. Ct. 966, 37 L. Ed. 847, where a patent for an embossed number impressed upon a spool head had expired, the court, after saying that thereafter others were

at liberty to use the design, said, in answer to the suggestion that a purchaser might be thereby misled into believing he was getting thread made by the Coats Company:

"If the purchaser of such thread desires a particular make, he should either call for such, in which case the dealer, if he put off on him a different make, would be guilty of fraud, for which the defendants would not be responsible, or should examine himself the lettering on the spools. He is chargeable with knowledge of the fact that any manufacturer of six-cord thread has a right to use a black and gold label, and is bound to examine such label with sufficient care to ascertain the name of the manufacturer."

Neither are the words "Elastic Seam" capable of exclusive appropriation by the Scriven Company. The word "seam" does ordinarily describe a line formed by sewing two parts together. But it also refers to any line of juncture. Another and common meaning is that of a thin layer or stratum, as a seam of coal or other mineral lying between strata of different kind. When the noun is associated with the adjective "elastic," it plainly means a line of juncture which is elastic or capable of being stretched. The words are aptly descriptive of the structure of garments made according to the design of the Brown patent. Neither is there any satisfactory evidence that the phrase has, aside from associations, acquired any such secondary meaning as to become an exclusive trade-mark.

But has the appellant company been guilty of selling garments made according to the design of the patent, representing them as made or sold by the Scriven Company? The appellants did issue a circular advertising a particular "Mill End Sale" in June, 1906, in which, among hundreds of other articles noticed, was the statement:

"Scriven's elastic seam style drawers, made with draw strap; mill end price, 24 cents."

This was also reproduced in the Sunday edition of a Knoxville daily paper. The Newcomer Company carried the elastic seam drawers made by the Scriven Company, and they also carried elastic seam drawers made by others; for, after the expiration of the Brown patent in 1898, such elastic seam drawers were made by other manufacturers freely and were largely sold in the open markets of the country. The garments made by the Scriven Company, costing a much higher price, were sold by the Newcomer Company at 75 cents per pair. Those not made by them were sold at 24 cents per pair. Each class were in stock, and were kept in boxes having the name of the Scriven Company upon the packages containing their manufacture. Those not bought from that company contained no reference calculated to mislead. It is also shown that the Newcomer Company stamped their own name on the garments made in the style of the Scriven's drawers, though in one or two instances this precaution was not observed; but this, we think, was accidental, and not intentional.

It is insisted that this advertisement was calculated to convey the idea that drawers made or sold by the Scriven Company were being sold at 24 cents. Upon the other hand, the contention is that, fairly read, it only advertised the fact that drawers on the style of the Scriven drawers were for sale at 24 cents. The Scriven Company have a right to the trade they have built up and the good name they have acquired as

manufacturers of men's drawers of this style, and others must not do anything which will probably mislead a purchaser into buying articles made by others than the Scriven Company upon the assumption that they are getting the product of that company. The right to make drawers of the style of the expired patent, which, during the life of the patent, came to be known as "Scriven's Drawers," or "Scriven's Elastic Seam Drawers," does not carry with it the right to deceive any purchaser into buying such drawers as drawers made or sold by the Scriven Company which were not so made or sold.

The purchaser is conclusively presumed to know that the Scriven's drawers were made according to a patent which expired 10 years since, and that since that time it has been free to anybody to make drawers of that construction or style. But if, as we have no doubt upon the evidence, there are many people who desire that style of drawers of the make of the Scriven Company, that good will may not be taken from them by deceit or unfair means. The right to advertise and sell drawers made on the style of the Scriven's drawers is the right of all. But, if the name of Scriven is to be connected or associated in such advertisement with that style, the advertisement should plainly show enough to advise the average purchaser that they were merely made on that style and by somebody else. It is not necessary to say, in so many words, that they are not made by Scriven, or the Scriven Company, for that would be to compel the carrying of a Scriven advertisement, provided the name of Scriven is not used at all, or, if so, in a descriptive way, that the articles are the product of some other. This advertisement was not sufficiently explicit upon this point and was calculated to mislead.

But it is not shown that any customer was misled into buying garments as made or sold by the Scriven Company which were made by others. An agent of the Scriven Company, attracted by the advertisement referred to, did endeavor to get evidence of specific oral misrepresentations. It is to be mentioned with reluctance that through his active efforts he did induce a young clerk to change a sale ticket so as to represent the articles sold as Scriven's drawers. But this agent was not deceived or misled. He knew exactly what he was getting, and the sale ticket was only marked wrongly at his suggestion. One or two other persons were sent by the same agent to buy the elastic seam drawers advertised at 24 cents, with directions to call for Scriven's drawers. The imitation drawers were delivered; the clerk explaining that the drawers made by the Scriven Company could be had at 75 cents. There was, therefore, no deception.

We see no such evidence of an intention to deceive or mislead as to require the injunctive process of the court now. The advertisement referred to was not sufficiently explicit, and more care is required. If repeated, the complainants should have leave to renew their application; but, as the case stands, the Newcomer Company have not been convicted of any such purpose to deceive or mislead as to justify the stricture implied by an injunction.

Decree reversed, with directions to dismiss the bill.