EDWARD HILKER MOP CO. v. UNITED STATES MOP CO. et al.

(Circuit Court of Appeals, Sixth Circuit.   November 7, 1911.)

No. 2,136.

1. PATENTS (§ 328*)—INVENTION—SELF-WRINGING MOP.

The Hilker patents, No. 744,196, claim 1, and No. 758,753, claim 1, each for a combined mop and wringer, are void for lack of patentable invention in view of the prior art, and especially of patent No. 716,417 to the same patentee.

2. TRADE-MARKS AND TRADE-NAMES (§ 75*) — UNFAIR COMPETITION — WHAT CONSTITUTES.

Nothing less than conduct tending to pass off one man's business or merchandise as that of another will constitute unfair competition, and similarity of circulars sent by a defendant manufacturer to its agents and prospective agents to those sent by complainant to its agents is not sufficient to constitute unfair competition, where the contents of the circulars were such that they were not likely to be shown to ultimate purchasers of the article.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 86; Dec. Dig. § 75.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION.

The adoption by one manufacturer of the characteristic features of another's product, common to articles of that class, does not of itself amount to unfair competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*

Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

Suit in equity by the Edward Hilker Mop Company against the United States Mop Company and others. Decree for defendants, and complainant appeals.   Affirmed.

Charles B. Gillson (Gillson & Gillson, on the brief), for appellant.

Wilbur A. Owen and Robert H. Parkinson (Owen & Owen, on the brief), for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. This suit was brought for the infringement of two patents issued by Edward Hilker upon self-wringing mops, and for alleged unfair competition in the advertising and selling of the same. On hearing below, upon pleadings and proofs, the bill was dismissed; the court holding, in terms as to one patent and inferentially as to the other, that it was invalid "for want of originality," and, even if valid, not infringed by defendant's mop. Little consideration was given to the charge of unfair competition because, in the court's opinion, whatever unlawful competition had existed had been discontinued, and because Hilker's conduct in sleeping upon his rights justified a conclusion that he did not attach great importance to de-

fendant's conduct. There are two individual defendants. But it becomes unnecessary to consider their relation, and we shall therefore call the Mop Company the defendant. In considering the validity and scope of the patents in suit, an earlier patent to Hilker plays so prominent a part that we refer to these three patents in their chronological order.

December 23, 1902, Hilker procured patent No. 716, 417 on combined mop and wringer therefor, figures 1, 2, 5, and 6 of which are here reproduced:

The specification stated that:

"The principal object of the invention is to provide a combined mop and wringer of simple and inexpensive construction in which the mopholder shall be so constructed that when the device is used for mopping or scrubbing the floor or other surface the body of the holder will be retained at a slight distance above the mop, so that the water will not be squeezed or pressed therefrom. Another object is to so construct the device that the mop or cloth may be wrung with either hand of the operator without soiling the hands, in which operation the mopholder will be held in such a position as to cause the mop or cloth to become taut when it is twisted."

Figure 1 of the patent, above shown, gives a side view of the structure, showing the mop head, the holder A and handle $B^1$ entering a socket-piece B and pivotally attached to the mopholder, a bail C, to the outer end of which the mop cloth is attached at one end and at its other end a hook $h$, which is an extension of the shaft H by which when the handle $f$ operates the bevel gears G and $G^1$, attached to the mop handle by means of the collar E, the mop cloth is twisted and so wrung. The crank shaft F is journaled through lugs on the collar E, which integrally includes the lugs for the crank shaft F and the extension supports in which the crank shaft H is journaled.

Figure 2 shows the mop head bifurcated, as in figure 1. Figure 5 shows the pivotal attachment of the handle to a solid block (not bi-

furcated), and figures 5 and 6 show modified forms of the bail. The specification states that the mop head "may be made of any suitable size, form, and material, but usually of wood." This patent we will for convenience call Hilker's first patent, although not his first patent in the general art.

[1] May 3, 1904, Hilker took out another patent, numbered 758,-753. on a combined mop and wringer, showing, instead of the wooden handle pivotally connected with the mop head, metal handle extensions entering the lower end of the wooden handle (which is slotted for the purpose of receiving them), and there being tightened by a wedge in the slot between the extensions. In this device the collar of the first patent, which supported the beveled gear wringing device, was employed as a ferrule for the lower end of the wooden handle, performing also the same office as in the first patent of supporting the beveled gear wringing device. The specification states that the mop head "may be made of any suitable size, form, and material, but preferably of malleable iron and of the form shown in the drawings." This form is sufficiently shown by figure 2 of the drawings reproduced below:

Fig. 2.

There is also shown a metal handle extension of one part, pivotally connected to the head between Nos. 16, 16. This we shall call Hilker's second patent. Claim 1 of this patent, which is alone sued on, reads as follows:

"The combination with the holder, of a handle extension pivotally secured thereto, a handle connected to the upper end of the extension, a collar surrounding the lower end of the handle and the upper end of the extension and forming a ferrule for the former, a twisting device located on the collar, and a mop or cloth connected at one of its ends to the twisting device and at its other end to the holder, substantially as described."

Pending the application for an allowance of this second patent, Hilker applied for and obtained a third patent (No. 744,196) upon a device differing from the second patent in no respects material here except: First, that the metal handle extensions instead of lying within the slotted end of the wooden handle lay outside thereof and within bosses upon the collar supporting the wringing mechanism; and, second, that the crank shaft of that mechanism is journaled through the collar and lower end of the wooden handle, instead of through the lugs on the collar, as in the first and second patents. The specification of this patent states that the mop head "may be made of any suitable size, form, and material, but preferably of malleable iron, and of the

form shown in Fig. 2 of the drawings," which is reproduced below, together with figure 13, showing a rear view of the modified handle extension suggested, with a foot for connecting the handle to the mop head:

Claim 1 of this patent is the only one sued on, and is as follows:

"The combination with the handle, of a wringer body or support mounted on its lower end, a crank shaft journaled centrally through the handle and on the said support, a beveled gear on the crank shaft, another shaft journaled at a right angle to the crank shaft and having means at one of its ends to engage a mop or cloth, a beveled gear on the other end of said shaft to mesh with the gear on the crank shaft, a handle extension comprising two members in engagement with the wringer body and located on the sides of the handle and having engaging means at their lower ends, and means to support and secure said members on the handle, substantially as described."

The first patent is not sued on. So far as the claims in question are concerned, the only differences between the device of Hilker's first patent and the inventions attempted to be secured by the second and third patents are: (1) The use of a wooden handle with metal extensions instead of a wooden handle throughout; (2) generally, the use of the collar of the first patent as a ferrule for the lower end of the wooden handle and to hold an extension in rigid connection; and (3) (as to the third patent), specifically, the use of the bosses on the collar for the purposes above named; and (4) journaling the crank shaft through the collar and lower end of the wooden handle instead of through·the lugs on the collar, as in the first patent. It is obvious that the invention disclosed by Hilker's first patent is as important in determining questions of anticipation and patentable invention as if the invention and patent were those of a third person. James v. Campbell, 104 U. S. 356, 382, 26 L. Ed. 786, is a case in point.

The crucial question is whether the combinations of elements contained in the claims before us are the subject of patentable invention.

In our opinion, taking into account the prior art generally and Hilker's first patent especially, invention is not shown. The patents in question did not enter a new field. Not only were combined mops and wringers old, but it was old to mount the bevel gear twisting device of a combined mop and wringer on a collar surrounding the handle. Hilker himself, even before what we have called his first patent, had employed the identical device so mounted on a self-wringing combined mop and scrubbing brush. The object of using metal handle extensions in place of the lower part of a wooden handle is said by complainant's expert witness to be to avoid a water-soaked wooden handle. But metal handle extensions (and presumably for a like purpose) are found in devices antedating the patents in suit.

The use of bosses on ferrules or collars for holding metal handle extensions in connection and alignment with wooden handles is likewise old. True, no one reference discloses all these features; but that is not necessary. The central journaling of a crank shaft through the handle is not new in the other arts in which such bevel gear is used, although it may not have been used in the specific art in question here; and we are not sure that the references show such journaling through the collar and handle for the purpose of preventing the turning of the collar. It is evident that the mop of the first patent, with its wooden head, performed the functions of the second and third patents, with their metallic heads, in substantially the same way and with the same result. In the device of the first patent the handle is pivotally attached to the head, as are the handle extensions of the second and third patents. Not only the form, but the method of operation, of the wringing device of the first patent is precisely the same as of the later patents, and the device is even located in the same relative position as respects the mop head. More than 40,000 mops manufactured under the first patent were marketed. The substitution of the specific form of metallic head adopted in the place of the wooden one, and the method of assembling the metallic handle extensions in pivotal connection therewith, impresses us as the most meritorious of the improvements of the later patents. But such feature is not involved here, and we are not concerned with the question whether, in view of the first Hilker patent, that feature contains invention. To divide the handle midway of the collar would not have constituted invention. Standard Caster & Wheel Co. v. Caster Socket Co. (C. C. A. 6) 113 Fed. 162, 51 C. C. A. 109. In our opinion it was clearly not invention, in view of the prior art, to employ metal handle extensions in place of the lower end of a wooden handle. Having adopted such extensions, to adopt in the same connection the collar of the old wooden handled mop, carrying the wringer mechanism, as the collar and ferrule of the handle and metal extensions carrying the same wringer mechanism, and thus performing the same functions as the old collar and in the same way, but with only the added function of holding the handle and extensions in connection and alignment, was the natural and obvious thing for Hilker to do. Such adoption under those circumstances did not, in our opinion, involve invention, but merely mechanical skill. Nor, having once so adopted the collar device of the first patent, did

it involve invention to embrace the extensions by bosses upon the collar rather than to include them within the slotted end of the handle, or to substitute the central journaling of the crank shaft in place of the screw of the first patent, for the purpose of securing the collar to the handle.

It is urged that the commercial success of the device of the later patents is persuasive evidence of patentable invention therein. Such consideration is frequently important, and even controlling, in cases otherwise doubtful. But we think the conditions here are not such as to bring the case within the rule mentioned. The conclusion we have reached makes it unnecessary to consider the question of infringement.

[2] The unfair trade complained of is alleged to consist, in part, in the use of advertising matter calculated to deceive. Complainant and its predecessors had been engaged in the manufacture and sale of mops a considerable time before the defendant and its predecessors entered the field. Both complainant and defendant sell their mops to agents, for whom they advertise in trade journals, newspapers, etc., and to whom they furnish printed circulars containing instructions and descriptive matter. The complainant in such advertisements and printed matter calls its mop the "Squeezie-Easy" mop. Defendant calls its mop the "Easy Wringer" mop. In both newspaper and trade journal advertisements defendant was, when the bill was filed, using pictures of the mop and employing expressions apparently copied from complainant's advertisements and circulars. Both parties, however, advertised prominently in their own names; their respective advertisements sometimes appearing upon a given page of the same journal. Such advertisements were not primarily intended to make sales to the ultimate purchaser, but to obtain agents, to whom other literature was sent in case of response to advertisements. The circulars sent defendant's agents were apparently copied, in substantial respects, from complainant's circulars to its agents. The similarity is such that, if intended or likely to be given to the ultimate purchaser, we should be disposed to hold that the ultimate purchaser who had seen complainant's circulars was likely to be deceived by defendant's circulars into purchasing in the belief that the goods were those of complainant's manufacture. But the nature of the circulars issued by both parties was such, containing as they did instructions to and a schedule of large compensations paid agents, that it seems quite unlikely that they would naturally fall into the hands of the ultimate purchaser. It is urged that, as defendant's circulars furnish "talking points" identical in many respects with those in complainant's circulars to its agents, the prospective purchaser may well be deceived by the similarity of the arguments used by agents. It seems to us that this possibility is rather remote. The rule is well settled that nothing less than conduct tending to pass off one man's business or merchandise as that of another will constitute unfair competition. Goodyear Company v. Goodyear Rubber Co., 128 U. S. 598, 604, 9 Sup. Ct. 166, 32 L. Ed. 535; Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 140, 25 Sup. Ct. 609, 49 L. Ed. 972; American Washboard Co. v. Saginaw Mfg. Co. (C. C. A. 6) 103 Fed. 281, 43 C. C. A. 233; Newcomer &

Lewis v. Scriven (C. C. A. 6) 168 Fed. 621, 94 C. C. A. 77; Rathbone, Sard & Co. v. Champion Steel Range Co. (C. C. A. 6) 189 Fed. 26, 30. We think a case of fraudulent competition is not so clearly made out as to justify us, in the face of the discontinuance of the alleged fraudulent competition since suit was begun (and the other considerations assigned by the Circuit Court), in reversing the decree in this respect. If the use of such advertising matter be continued or renewed, complainant should not be barred by this decree from seeking redress therefor.

Complaint is also made that defendant's mop (its only article of manufacture) is so similar in appearance to one of complainant's mops as to fraudulently deceive purchasers. The mop in question has galvanized iron handle extensions and bail, and a stamped galvanized iron head. The complainant's mop has the trade-name ("Squeezie-Easy" Mop), date of patent, and the name of "E. Hilker, Chicago, Ill.," prominently stamped on the metal head. The defendant's mop has its corporate name (but not trade-name) and the date of the Slusser patent, under which it claims the right to manufacture, plainly stamped on the head, but not so prominently as in the case of complainant's mop. In the samples before us the defendant's handle extensions, handle to crank shaft, and spool on the handle are of the natural color, those on complainant's mop being painted or japanned black, otherwise the superficial appearance of the two mops is substantially identical.

[3] We pass by, without deciding, the claim of fact made by defendant that complainant had ceased manufacturing the mop in question when defendant began its manufacture. Complainant having no monopoly upon the design of the mop, defendant was free to copy it so long as it did not attempt thereby to palm off its goods as those of complainant, and took due care to guard against any deception of the public into buying in the belief that it is purchasing complainant's goods. The adoption by one manufacturer of the characteristic features of another's product, common to articles of that class, does not of itself amount to unfair competition. See Rathbone, Sard & Co. v. Champion Steel Range Co., 189 Fed. at page 31, where several authorities are collected. In the case last cited we referred to a line of authorities which hold that the unnecessary imitation by one manufacturer of the nonfunctional parts of the product of a competitor, to the extent that the two articles are substantially identical in appearance to a casual observer, and retail purchasers thus likely to mistake one for the other, amounts to unfair competition, although each feature taken separately may have been open to appropriation. We are not now called upon to determine the correctness of that rule. In the case before us the elements used by the defendant are of the natural color, or material purchasable in the open market as regular stock, and of a form naturally to be adopted for the purpose. Under all the circumstances, we do not think defendant's mop such an unnecessary imitation of complainant's mop, as respects nonfunctional parts or nonfunctional features of functional parts, as to bring it within the rule to which we have referred, even if such rule were to be adopted.

We are constrained to hold that fraudulent competition in the respect under consideration is not made out.

It results from these views that the decree of the Circuit Court should be affirmed, with costs.