## A. J. KRANK MFG. CO. v. PABST et al.

(Circuit Court of Appeals, Sixth Circuit. December 9, 1921.)

No. 3554.

1. **Trade-marks and trade-names and unfair competition ⬅—3(4)—"Lather Kreem" held descriptive of a shaving compound, and not the subject of a valid trade-mark.**

   The name "Lather Kreem," as applied to a shaving cream or paste, *held* purely descriptive, and not the subject of a valid trade-mark.

2. **Trade-marks and trade-names and unfair competition ⬅—93(3)—Evidence held not to establish unfair competition.**

   Defendant *held* not chargeable with infringement of complainant's copyrighted label, on which its product, a shaving compound, is designated as "Kranks Lather Kreem," or with unfair competition by the use of label on a similar product, on which it is named "Twilight Lather Cream," where the labels and packages are not otherwise similar in appearance or coloring, and each shows prominently the name and address of the maker, and there is no evidence of purchasers having been deceived.

3. **Trade-marks and trade-names and unfair competition ⬅—93(3)—Evidence as to actual deception to be considered in suit for infringement.**

   In a suit for infringement of trade-mark or unfair competition, while proof of actual deception is not essential, the lack of such proof may properly be taken into account, in connection with the appearance of the alleged infringing product, as not calculated to mislead.

Appeal from the District Court of the United States for the Southern District of Ohio; John E. Sater, Judge.

⬅—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity by the A. J. Krank Manufacturing Company against Chris H. Pabst and others. Decree for defendants, and complainant appeals. Affirmed.

Frank A. Whiteley, of Minneapolis, Minn., for appellant.

J. D. Karns, of Columbus, Ohio (G. C. Brown, of Columbus, Ohio, on the brief), for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff manufactures a shaving cream, which it markets under the name of "Lather Kreem"; its label (which contains the trade-name) being copyrighted. This suit is for alleged infringement of trade-mark and copyright, as well as unfair competition, through the manufacture and marketing by defendants of a shaving cream under the name of "Twilight Lather Cream." The appeal brings up for review the decree of the District Court, dismissing the bill for noninfringement and lack of unfair competition.

In our opinion the bill was rightly dismissed, but we prefer to rest our affirmance upon a somewhat broader basis than adopted by the District Court. The plaintiff began the manufacture of its product in the year 1910 according to a secret formula, copyrighting its label in the year 1916. The preparation takes the form of a soft paste (stored in tubes or jars), which is applied directly to the face, thus dispensing with brush and cup, and requiring no more rubbing with the fingers than suffices to cover the parts to be shaved.

[1] Setting to one side defendants' contention that the damages suffered and profits made through the alleged infringement and unfair competition are too trifling to justify resort to equity for injunction—in our opinion the expression "Lather Kreem," as applied to plaintiff's product, is purely descriptive, and thus not the subject of a valid trademark. But for the word "Krank's," the name has no tendency to indicate origin. Shaving creams, and under that specific name, were well known long before 1910. The 1899 edition of the Century Dictionary gives as a secondary definition of cream:

"Any liquid or soft paste of the consistency of cream; as the *cream* of ale; shaving *cream*." (Lexicographer's italics.)

Moreover, the record specifically mentions three shaving creams as in public use before 1910, viz.: "Euxesis," from about 1895, and two others from about 1905. On this branch of the case the only question requiring serious consideration is that presented by plaintiff's contention that the word "lather" fails of being descriptive by the fact that the preparation contains no soap. But this contention is in our opinion only plausible, at the most. It is true that in its strict sense the term "lather" presents the thought of:

"Foam, froth or suds made from soap, moistened with water, as by a brush for shaving;" or "foam or froth formed in profuse sweating, as of a horse." Century Dictionary, title "Lather."

But the preparation in question is solely a shaving compound. That no ingredient is inserted in the form of soap as such must be accepted, in view of the testimony of plaintiff's president, hereafter referred to.

But that an actual equivalent of soap is absent is by no means satisfactorily established. The formula for the preparation is nowhere given, nor the identity of any ingredient employed. The only testimony on this subject is that of Mr. Krank, plaintiff's president, who, after saying that "the Lather Kreem shaving preparation does not contain any soap at all," and while still under examination by plaintiff's counsel, adds:

"There may be some ingredient in it which may be similar to soap—or *may be that way.* However, it is not a soap. It is not a lather, *strictly speaking.* It answers the purpose of a lather; *provides a lather."* (Italics ours.)

His reason for saying that it is not "really a lather" is:

"Because you can't can a lather. You understand, you can't put a lather in a jar, and leave it in that form, because it would fall in very short order, and therefore you cannot really make a lather in that way." [1]

This proposition, as applied here, does not impress us. In the first place, the testimony referred to must be considered in connection with the certificate of registration of label, which gives the title "Krank's Lather Kreem," as *"for soap or soap lather."* (Italics ours.) Again, not all shaving creams take the form of lather without the use of brush. As to one of the shaving creams in public use Mr. Krank specifically says:

"You have to put it on with a brush and make a lather with it."

In the case of one of the others, mentioned above as in public use from about 1905, the directions call for wetting the face with a brush and applying the cream, either to the brush or directly to the face, and then working up the lather. In our opinion, the name "Lather Kreem" was intended to convey the idea of a shaving cream, which, as furnished, took the form of or provided a lather, and without the use of brush, water, or cup. That idea is emphasized by the slogan upon the label:

"No brush, no cup, no soap, no water. Just apply and shave." [2]

It is not important whether the "lather" is "canned," or whether it is "provided" by applying the preparation to a wet face, and distributing it over the face by the fingers. The cream, being a paste, of course contains moisture. The directions say:

"Wet the skin, apply Lather Kreem, wait a minute, and then shave."

In either case the name "Lather Kreem" is equally descriptive. We cannot doubt that the user of "Lather Kreem," after applying the prep-

[1] The word "lather" seems to have been originally the name of a form of niter used for soap, and which seems to have been an alkali or alkaline salt.

[2] The quoted words suggest, not so much the absence of soap or its equivalent, as the absence of the combination of the four elements. It appears that "Euxesis" had the substance of this slogan, viz.: "Without soap, water, or brush," which, in view of Mr. Krank's statement that Euxesis was "greasy," apparently does not necessarily mean that there was no soap in the shaving cream. Another of plaintiff's slogans is: "Replaces soap and brush for shaving. No rubbing."

aration to his face for shaving purposes, would think his face was "lathered," rather than "creamed," nor that the manufacturer intended he should so understand. The name "Lather Kreem" is thus not merely fanciful, suggestive, figurative, metaphorical, or boastful, as is the case with the words "Holeproof," "Wearever," "Queen Quality," "Imperial," etc. It is, in our opinion, as distinctly descriptive as the word "aluminum," when applied to washboards (American Washboard Co. v. Saginaw Mfg. Co., 103 Fed. 281, 43 C. C. A. 233, 50 L. R. A. 609), "computing," when applied to scales (Computing Scale Co. v. Standard Computing Scale Co., 118 Fed. 965 [1]); "elastic seam," as applied to men's underwear (Newcomer & Lewis v. Scriven, 168 Fed. 621, 94 C. C. A. 77), or "toasted corn flakes," when applied to a breakfast food (Kellogg Toasted Corn Flake Co. v. Quaker Oats Co., 235 Fed. 657, 662, 149 C. C. A. 77).

We think the trade-name tells the whole story, and was designed to do so. It scarcely need be said that the misspelling of the word "cream" cannot give validity to a name otherwise invalid as a trademark. The fact that the name "Lather Kreem" was new with plaintiff is not decisive. The same was true of "toasted corn flakes," held by this court to be purely descriptive. Kellogg Toasted Corn Flakes Co. v. Quaker Oats Co. (C. C. A. 6) 235 Fed. 657, 149 C. C. A. 77. The conclusion that the trade-name in question was merely descriptive can be avoided only by a finding that it contains, by implication, a substantial misstatement of fact, which itself would make the trade-mark invalid. Whether plaintiff's preparation is better than its predecessors is beside the mark. The suit is not for the protection of a secret formula. Indeed, plaintiff disclaims any charge of such pirating.

Nor do we think it fairly established that the name "Lather Kreem," without other designation, has acquired a secondary meaning, as indicating plaintiff's product. Defendants' product, under its trade-name, "Twilight Lather Cream," was on sale at Columbus (which was the only place where sales of that product had been made) as early as 1915, and apparently before plaintiff's label was copyrighted. Sufficient proof of the acquirement of such secondary meaning is not furnished by the facts that the druggist jobbers who received orders (presumably from retailers) for "Lather Kreem," and in that form, and who inferably had never heard of any other "lather cream" by that name, have supplied "Krank's Lather Kreem" (Kellogg Toasted Corn Flakes Co. v. Quaker Oats Co., supra, 235 Fed. at page 664, 149 C. C. A. 77), and that in applications made to plaintiff itself, as the manufacturer, the words "lather cream" were variously spelled.

[2] If we have rightly concluded that plaintiff's trade-mark is invalid, the question of its infringement is unimportant. But, regardless of the correctness of that conclusion, we agree with the District Court that defendants are not shown to have infringed the trade-mark or otherwise to have been guilty of unfair competition. The name of plaintiff's product, as contained in its label in general use and as copyrighted, is "Krank's Lather Kreem." It is not claimed that defendants have used this label, or this name, or that they have represented (except inferably by similarity of label) that their product is that of plain-

[1] 55 C. C. A. 459.

tiff. No complaint of defendants' advertising is made, except that contained in labels or other matter on its cartons. The decisive question thus is whether such labels and printed matter are reasonably calculated to mislead the ordinary and unwary purchaser into thinking he is buying plaintiff's product, and so enabling defendants to palm off their product as that of plaintiff. (Edw. Hilker Mop Co. v. U. S. Mop Co. [C. C. A. 6] 191 Fed. 613, 618, 112 C. C. A. 176); although unfair competition is possible notwithstanding nonidentity of name (Gaines v. Turner-Looker Co. [C. C. A. 6] 204 Fed. 553, 555, 123 C. C. A. 79).

We think the question above stated must be answered in the negative. Defendants' product has always been distinctly and prominently marked and labeled "Twilight Lather Cream." The name and address of the manufactures (Pabst & Kohler) distinctly and prominently appear, in connection with the labels, on both containers and cartons. Plaintiff's product is equally distinctly and prominently marked "Krank's Lather Kreem"; the manufacturer's name and address being distinctly and prominently given. True, the language of the directions and slogans used by defendants are so very similar to those used by plaintiff as to suggest partial copying. But, as was pointed out by the District Judge:

"They [the tubes and cartons] are so radically different in appearance that no ordinary purchaser would mistake one for the other."

Plaintiff's labels on both containers and cartons are printed in two colors and are decidedly ornamental in appearance. Defendants' labels are printed in one color and without ornamentation. As we have already said, the shaving cream "Euxesis," which long antedated plaintiff's manufacture, used the words "without soap, water or brush." As the District Judge well said:

"The general impression made by defendants' article upon the eye of a casual purchaser, who is unsuspicious and off his guard, is not such as to be likely to result in his confounding it with plaintiff's product."

[3] While proof of actual deception is not essential, the lack of proof thereof may properly be taken into account, in connection with the appearance of the alleged infringing product as not calculated to mislead.

We think the instant case is brought directly within Kellogg Toasted Corn Flakes Co. v. Quaker Oats Co., supra. .

The decree of the District Court is affirmed.