DOVER STAMPING COMPANY *vs.* JABEZ B. FELLOWS
& another.

Suffolk.    December 6, 1894. — March 1, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Trademark — " Dover " — Patent — Trade Name — Statute — Unfair
Competition — Equity.*

A word which might become a valid trademark when applied to an unpatented article may not be so when applied to a patented article.

Where one who has a patented article gives to it and puts upon it a name, and calls it by that name and by no other, and it becomes known to the trade and to the public exclusively by such name, then, as a general rule, the right to the exclusive use of the name ceases with the termination of the exclusive right to make and sell the article.

A person who has used a name as descriptive of a patented article, but in which he has no trademark, is not entitled, after the expiration of the patent, to protection under Pub. Sts. c. 76, § 1, providing that trademarks are not to be used without the consent of the owner.

If a person has used a name as descriptive of a patented article, and not as a trade-

mark, he cannot maintain a bill in equity, after the expiration of the patent, to restrain the use of the name by another person upon an article made by the latter, on the ground that he is injuring the plaintiff by unfair competition, merely by showing that the defendant is making and selling an article similar in kind and under the same name as that of the plaintiff.

BILL IN EQUITY, filed May 11, 1891, to restrain the use of the name "Dover" as applied to egg-beaters. Hearing before *Holmes*, J., who, at the request of both parties, reserved the case for the consideration of the full court, such decree to be entered as law and justice might require. The facts appear in the opinion.

*T. W. Clarke*, for the plaintiff.

*E. S. Beach*, for the defendants.

ALLEN, J. This case comes up on a report of the evidence, without any findings of the facts. We have therefore in the first place to determine and state the material facts shown by the evidence, and then to determine the rules of law applicable to the facts.

In 1857 a partnership or company was established under the name of the Dover Stamping Company, which in 1871 was organized as a corporation under the laws of this Commonwealth, having its usual place of business in Boston and its factory in Cambridge. This company, both before and after its organization as a corporation, may for convenience be called the plaintiff. It manufactured and dealt in kitchen furnishing goods and tin ware. On May 31, 1870, one Turner Williams obtained letters patent for an improved egg-beater, the essential principle of which consisted in having two interworking or interlacing floats or beaters, revolving in opposite directions on separate centres, and occupying the same working space. The plaintiff dealt in egg-beaters of different kinds, and in 1870 obtained control of the Williams patent, and as early as 1872 became the owner of it. In 1870 the plaintiff contracted with the Lamb Knitting Machine Manufacturing Company for the manufacture of egg-beaters under the Williams patent, and also of other kinds of egg-beaters. To the egg-beaters under the Williams patent the plaintiff gave the name of "Dover," and on October 31, 1870, directed the Lamb Company to put on the wheel of the egg-beaters the words and figures, "Dover Egg

Beater, Pat'd May 31st, 1870." This was done. On May 6, 1873, one Ethan Hadley obtained letters patent for an improvement in egg-beaters. In his specification he said, "My invention relates to an improvement in what is known as the Dover egg-beater," and in his claim he spoke of his invention as " an improvement on the Dover egg-beater." This invention was assigned to the plaintiff. The Lamb Company continued to be the exclusive manufacturer of the Dover egg-beaters for the plaintiff under these patents until the expiration of the last patent in 1890. These egg-beaters were made in three sizes. The ordinary size, adapted for family use, constituted ninety-eight or ninety-nine per cent of the whole manufacture. The largest size was sometimes called the "mammoth," or "hotel" size; of these perhaps one thousand were made in all. The second largest size was called the "extra family size," and perhaps ten times as many of these were made as of the hotel size. The whole number of Dover egg-beaters of all sizes made for the plaintiff by the Lamb Company was about four million. These egg-beaters were known by the trade and by the public as "Dover" egg-beaters. They were spoken of and bought and sold under that name, and they had no other name. The name "Dover" was used to signify and indicate this article; and there was no other usual short way in which to describe it. "Dover" was the name by which they were universally known. This name signified the above mentioned combination of floats or beaters, propelled by a wheel and handle. The improvement patented by Hadley, and various unpatented improvements which were made from time to time, were not essential features of the machine, but were rather changes and improvements in mechanical details, not affecting the principle or the general mode of construction. Some stress has been laid on these changes in the argument for the plaintiff, but they appear to us insufficient to show that the word "Dover" meant to dealers or to the public anything else than egg-beaters of that general construction and appearance. From the outset the general construction and appearance remained about the same, only there were some changes in mechanical details which were not distinguishing characteristics of the article.

Since 1875, various other articles manufactured or sold by the

plaintiff have been named or called "Dover," as, for instance, Dover can-spouts, Dover tea-kettles, Dover coal-hods, etc.   The plaintiff's machines were all marked "Dover Egg Beater," with dates of patents, in which last particular there was some change after the Hadley patent was obtained.   The defendants' machines which are complained of were marked simply "Dover," with dates of other patents.   The defendants' mode of packing the goods had been in use before the Williams patent was obtained.

The plaintiff contends, in the first place, that the word "Dover" as applied to egg-beaters is a trademark, and that it is entitled to be protected in the exclusive use of that word.   The defendants deny that the plaintiff could acquire a valid trademark in the word "Dover" under any circumstances; *Columbia Mill Co.* v. *Alcorn,* 150 U. S. 460; Sebastian, Trademarks, 82, and cases cited; but it is enough for us to inquire whether the plaintiff has done so under the particular circumstances of this case.

A word which might become a valid trademark when applied to an unpatented article may not be so when applied to an article which has the protection of letters patent.   In the latter case the letters patent indicate the ownership and origin of the article, and it is more readily to be inferred that the word is used as a name merely to identify the article.   Usually the protection given by a patent is far greater, though of less duration in time, than that obtained by the use of a trademark; because if an article is patented nobody but the owner of the patent can without his consent make or sell anything embodying the same principles or elements, while a trademark only secures one in the use of the name or emblem adopted by him and applied to the article.   Sebastian, Trademarks, 15.   One may choose to rely on the name alone; and if so, he may establish or create a trademark which will be permanent.   But if he seeks and obtains the protection afforded by a patent, he is bound to yield up his monopoly with all that belongs to it at the end of the term, and the right to the exclusive use of the name given to his goods, which might otherwise have become a trademark, will ordinarily fall with the patent itself.   It is sometimes said that the granting of a patent is a contract with two sides to it;

that the government grants an exclusive use for a term of years, and the patentee agrees to surrender that use fully and freely for the general benefit of the public at the end of that term; and that this contract is to be liberally construed in favor of the patentee during the term, and in like manner liberally construed in favor of the public after the term has expired. Robinson, Patents, §§ 40, 44. This at any rate describes with substantial accuracy the resulting rights of the parties. After the expiration of a patent, the public is entitled to make and use the patented article, free from restrictions; and, this right carries with it whatever is necessary for its full enjoyment.

In *Cheavin* v. *Walker*, 5 Ch. D. 850, 862, it was said by Jessel, M. R.: "Protection only extends to the time allowed by the statute for the patent, and if the court were afterwards to protect the use of the word as a trademark, it would be in fact extending the time for protection given by the statute. It is, therefore, impossible to allow a man who has once had the protection of a patent to obtain a further protection by using the name of his patent as a trademark." And in the same case, James, L. J. said: "It is impossible to allow a man to prolong his monopoly by trying to turn a description of the article into a trademark. Whatever is mere description is open to all the world." In *In re Palmer's Trademark*, 24 Ch. D. 504, 521, Lindley, L. J. said: "I do not mean to say that a manufacturer of a patented article cannot have a trademark not descriptive of the patented article so as to be entitled to the exclusive use of that mark after the patent has expired; for instance, if he impressed on the patented articles a griffin, or some other device; but if his only trademark is a word or set of words descriptive of the patented article of which he is the only maker, it appears to me to be impossible for him ever to make out as a matter of fact that this mark denotes him as the maker as distinguished from other makers." And in *In re Leonard & Ellis's Trademark*, 26 Ch. D. 288, 303, 304, after an elaborate exposition by Lord Chancellor Selborne, it was said by Cotton, L. J.: "If a man has a patent, and during the term of his patent is the only maker of an article to which he gives a particular name, which name during the continuance of the patent comes to be merely a description of the article, he cannot, in my opinion, after his patent is gone, and the making

of the article is free and open to all the world, claim the name as his trademark."

In the present case, it is not necessary for us to go so far as to say that where there is a patent there can be no trademark, especially where some special device or symbol is added to the general name of the article manufactured. But where one who has a patented article gives to it and puts upon it a name, and calls it by that name and by no other, and it becomes known to the trade and to the public exclusively by the name so given to it by the patentee or person controlling the patent, then certainly it may be said that, as a general rule, the right to the exclusive use of the name ceases with the termination of the exclusive right to make and sell the thing. This is shown by numerous decisions in England and in this country. *Linoleum Manuf. Co.* v. *Nairn,* 7 Ch. D. 834. *Wheeler & Wilson Manuf. Co.* v. *Shakespear,* 39 L. J. Ch. 36. *Young* v. *Macrae,* 9 Jur. (N. S.) 322. *In re Palmer's Trademark,* 24 Ch. D. 504, 517, 520, 521. *In re Leonard & Ellis's Trademark,* 26 Ch. D. 288. *Singer Manuf. Co.* v. *Stanage,* 6 Fed. Rep. 279. *Singer Manuf. Co.* v. *Riley,* 11 Fed. Rep. 706. *Singer Manuf. Co.* v. *Larsen,* 8 Biss. 151. *Singer Manuf. Co.* v. *June Manuf. Co.* 41 Fed Rep. 208. *Brill* v. *Singer Manuf. Co.* 41 Ohio St. 127. *Tucker Manuf. Co.* v. *Boyington,* 9 U. S. Pat. Gaz. 455. *In re Consolidated Fruit Jar Co.* 14 U. S. Pat. Gaz. 269. *Lorillard* v. *Pride,* 28 Fed. Rep. 434. *Gally* v. *Colt's Patent Fire Arms Manuf. Co.* 30 Fed. Rep. 118. *Coats* v. *Merrick Thread Co.* 36 Fed. Rep. 324. *Hiram Holt Co.* v. *Wadsworth,* 41 Fed. Rep. 34. The inclination of courts to treat a name so used as merely the name of the goods, and not as denoting any connection between them and the trader, is mentioned by the text-writers. Kerly, Trademarks, 40–42, 201, 202, 405. Sebastian, Trademarks, 59–61. See also Browne, Trademarks, §§ 220 *a,* 221.

If therefore we should assume that there may be a double use of a word like " Dover," and that it may be used both as the name of the patented article and as a trademark, then it would be necessary to see if in this case there was sufficient evidence to show that the plaintiff so used it as to import a trademark as well as the name of the patented article, and also that the defendants have used it in a like double sense. Since ordinarily

the exclusive right to use the name ceases with the expiration of the patent, there must at least be something to show some special and distinguishing use, by which it can be seen and known that the word is not used merely as the name of a thing, but to import the additional feature of a trademark. *In re Leonard & Ellis's Trademark*, 26 Ch. D. 288, 296, 298. There is nothing to show that the plaintiff ever had this distinction in mind, or used the word in any other manner than merely as the name given to the egg-beaters. Nor, on the other hand, is there anything to show that the defendants, since the expiration of the patent, have used the word in any other sense than to call the machine by its name. This they have a right to do; and to entitle the plaintiff to an injunction it must be shown that the defendants have used the word in a further sense, so as to violate the plaintiff's right of trademark, while using the word "Dover" as the name of the machine, as they lawfully may do; and any injunction which might be granted would have to be so limited as not to prohibit the defendants from calling the egg-beaters by their name. The distinction is fine, perhaps too fine for practical application. In this case we are not satisfied, on the evidence, that the plaintiff has any trademark in the name "Dover." A mere name is often held to be simply descriptive of the article which is called and known by it and by no other name, and it may be assignable to others, even though it is the name of the inventor or original manufacturer or dealer himself. *Thomson v. Winchester*, 19 Pick. 214. *Gilman v. Hunnewell*, 122 Mass. 139. *Russia Cement Co. v. LePage*, 147 Mass. 206, and cases there cited. *Noera v. Williams Manuf. Co.* 158 Mass. 110. See also *Columbia Mill Co. v. Alcorn*, 150 U. S. 460; *Hall v. Barrows*, 4 DeG., J. & S. 150. The word "Dover" has by use thus come to be simply descriptive of an egg-beater made under the Williams patent, and it became common to the public on the expiration of that patent.

The plaintiff contends that it has a right to protection under Pub. Sts. c. 76, § 1, providing that trademarks are not to be used without the consent of their owner. But the plaintiff derives no additional rights under this provision of statute, because the word "Dover" was used as the name of the machines, and not as a trademark, and it was not the intention of the

statute to do away with the rule that the name of a patented article becomes open to general use upon the expiration of the patent. This rule has heretofore been incidentally alluded to in a way to imply that it was understood to be in force in this Commonwealth. *American Order of Scottish Clans* v. *Merrill,* 151 Mass. 558, 562. *Chadwick* v. *Covell,* 151 Mass. 190, 195.

The plaintiff further contends that the defendants have used the word " Dover " as a mark on their egg-beaters in a way calculated to deceive the public, independently of the question of the trademark. This, according to the contention of the plaintiff, means that they are passing off their goods as goods made for or by the plaintiff, and thus are injuring the plaintiff by unfair competition. No doubt the use of the word " Dover " on the egg-beaters is an advantage in the market; but this is an advantage which the defendants are entitled to have, unless the plaintiff has a valid trademark. It must now be assumed that the plaintiff has no trademark in the name, and that the name as well as the invention is open to common use. This being so, something more must be shown than merely that the defendants are making and selling egg-beaters similar in kind to those of the plaintiff, and under the same name. *Magee Furnace Co.* v. *Le Barron,* 127 Mass. 115. *Brill* v. *Singer Manuf. Co.* 41 Ohio St. 127. *Singer Manuf. Co.* v. *Riley,* 11 Fed. Rep. 706. *In re Leonard & Ellis's Trademark,* 26 Ch. D. 288. *In re Ralph's Trademark,* 25 Ch. D. 194, 198. *Singer Manuf. Co.* v. *Loog,* 8 App. Cas. 15. The evidence fails to show any violation of the plaintiff's rights in this respect. There is nothing in the making of the defendants' egg-beaters to indicate that they were made by the plaintiff, unless the use of the word " Dover " on the wheel. The defendants had a right to put this marking on the wheel. In form and construction and general appearance, there was some resemblance between the defendants' egg-beaters and the plaintiff's; but imitation in these respects is lawful. In *Fairbanks* v. *Jacobus,* 14 Blatchf. C. C. 337, it was held that, apart from patents and trademarks, " Any one may make anything in any form, and may copy with exactness that which another has produced, without inflicting any legal injury, unless he attributes to that which he has made a false origin, by claiming it to be the manufacture of another person." This was

cited and approved in *Brill* v. *Singer Manuf. Co.* 41 Ohio St. 127, 138, where it was held broadly that, " where machines during the time they are protected by a patent become known and identified in the trade by their shape, external appearance, or ornamentation, the patentee, after the expiration of the patent, cannot prevent others from using the same modes of identification in machines of the same kind, manufactured and sold by them." And in *Singer Manuf. Co.* v. *June Manuf. Co.* 41 Fed. Rep. 208, the above doctrines were reaffirmed with distinctness and emphasis. There is no unfair competition, apart from the infringement of a patent or trademark, unless the competing person so makes or marks his goods or conducts his business that purchasers of ordinary caution and prudence, and not those who are exceptionally dull, are likely to be misled into the belief that his goods are the goods of somebody else. *Gilman* v. *Hunnewell,* 122 Mass. 139, 148–150. *Singer Manuf. Co.* v. *Wilson,* 2 Ch. D. 434, 447, per Jessel, M. R., whose decree was affirmed on appeal. *Brill* v. *Singer Manuf. Co.* 41 Ohio St. 127. *Robertson* v. *Berry,* 50 Md. 591.

Looking at the whole case in the light of the defendants' right to use the word " Dover " and to make egg-beaters similar in construction and general appearance to those of the plaintiff, we find no proof of anything unlawful on their part.

*Bill dismissed.*