### RATHBONE, SARD & CO. v. CHAMPION STEEL RANGE CO.

(Circuit Court of Appeals, Sixth Circuit.   July 11, 1911.)

#### No. 2,116.

1. TRADE-MARKS AND TRADE-NAMES (§ 70*)—"UNFAIR COMPETITION"—WHAT CONSTITUTES.

The essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another, and the copying by one manufacturer of stoves of an unpatented design of a stove made by another, only a few of which had been sold so that it was' not known to the buying public, and no purchaser was deceived, the characteristic marks of the original designer being removed and those of the maker substituted, did not constitute 'unfair competition which would sustain a suit for an injunction.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*

For other definitions, see Words and Phrases, vol. 8, pp. 7174, 7824.]

2. TRADE-MARKS AND TRADE-NAMES (§ 69*)—UNFAIR COMPETITION—WHAT CONSTITUTES.

The fact that an article of defendant's manufacture is represented by unprincipled retailers as that of complainant does not render defendant liable for unfair competition, providing it did its legal duty in distinguishing its product from that of complainant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 80; Dec. Dig. § 69.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 69*)—UNFAIR COMPETITION—WHAT CONSTITUTES.

Where the deception of purchasers is not the natural result of the imitation by defendant of goods made by complainant, and there is no intention to so deceive purchasers, a case of unfair competition is not made out.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 80; Dec. Dig. § 69.*

Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

Suit in equity by Rathbone, Sard & Co. against the Champion Steel Range Company. Decree for defendant, and complainant appeals. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

C. J. Sawyer, M. B. Philipp, and J. J. Kennedy, for appellant.

D. C. Westenhaver and E. J. Hart, for appellee.

Before SEVERENS and KNAPPEN, Circuit Judges, and EVANS, District Judge.

KNAPPEN, Circuit Judge. [1] The appellant filed its bill of complaint against appellee, alleging unfair competition by the latter in the manufacture and sale of a certain type of natural-gas heater. The bill prayed for a permanent injunction against such manufacture and sale, and asked for certain special relief incidental to the general relief asked. Upon a final hearing on pleadings and proofs, the Circuit Court made a decree dismissing the bill, from which decree this appeal is taken.

The important facts are these:

Complainant is one of the largest and longest established manufacturers of stoves, ranges, and heaters (both coal burning and wood burning) in the United States. It has been in business since the year 1830. Its factories are now at Albany, N. Y., and Aurora, Ill. In the year 1835 it registered the "Acorn" as its trade-mark and has used the same ever since upon its product, unless in the case of a few cheap stoves. Its product enjoys an excellent popularity, being known to the public generally under the name of the "Acorn." About the year 1900, with the development of natural gas in the territory hereafter mentioned, several stove manufacturers began making natural-gas ranges and heaters. This natural gas territory included western New York, western Pennsylvania, Ohio, West Virginia, and parts of Indiana, Oklahoma, Kansas, Missouri, and possibly some other territory. In 1903 the complainant began making natural-gas ranges. It made no natural-gas heaters until 1905. At that time there were upon the market and in use substantially two types of natural-gas heaters of the better class, one having a rounding and the other a tubular drum. In 1904 there was put out by another manufacturer a heater known as the "Reliable." In 1905 complainant prepared designs for a natural-gas heater called the "Solar Acorn." The appearance of complainant's "Solar Acorn" differs, generally speaking, from that of the "Reliable" only in certain features of ornamentation, the shape, style, base, foot-rail, fire pot, reflector, drum, and top being substantially the same (except as hereafter stated), as well as the broad, general plan of ornamentation. Complainant made the ornamentation at the top of its "Solar Acorn" more elaborate than in the case of the "Reliable," apparently substituted a white for a black finishing rim above the drum, adopted a different design of ornamental pieces on the side of the drum, which were brought well forward, the ornamentation above the reflector being carried a little higher, and the foot rail and base ornamentation made somewhat more elaborate.

We do not intimate that complainant actually used the "Reliable" as a copy, or that it adopted features of ornamentation belonging peculiarly to that heater. The fact and extent of similarity are all that are material here. The "Solar Acorn," as exhibited in adver-

tising cut and as manufactured, had in all cases the device of the acorn upon the scroll work above the reflector and upon the corners of the base constituting the legs, and the words "Solar Acorn" prominently upon the foot rail, the name of the manufacturer being shown upon the back side of the stove. Complainant sells its product only to dealers, not directly reaching the ultimate purchaser and user. The territory covered by its sales is divided by the Ohio river into the eastern and the western territory, respectively, headquarters for the former being at Albany and for the latter at Aurora. The method and extent of its advertising of the heater in question, and of its attempts to bring the same to the attention of the public prior to the defendant's coming into the market, are these: In September, 1905, it issued from 2,000 to 2,500 leaflets which it distributed in approximately equal amounts through the Albany and Aurora headquarters, these leaflets being sent to dealers only, except as a very few were given to traveling salesmen, who did not call upon the user or consumer, but only upon the dealer. The latter distributed the leaflets only by handing them out to customers calling at the store, or by leaving them upon the counter accessible to customers. In February, 1906, 1,500 circulars were issued, and before April 1st of that year 2,000 catalogues. These circulars and catalogues seem to have been distributed in substantially the same way as the leaflets. In each of these three classes of literature the Solar Acorn was shown and advertised. Complainant has never advertised this heater in the newspapers, trade journals, or magazines. In December, 1905, complainant shipped 12 of these heaters to dealers in Ohio, and in the following January two more. As a general rule but one stove was sent to each dealer, the same being apparently intended to be used as a sample. From February 1, 1906, to August 1, 1906, three more deliveries were made to dealers in Ohio. In January, 1906, four were sent to dealers in Missouri and Kansas, no more being delivered previous to August of that year. In the Eastern territory deliveries were begun in November, 1905. It is not definitely shown, so far as appears by references in briefs of counsel, that more than two stoves were actually delivered to dealers in that territory in 1905. The testimony of the extent of sales to dealers during that year is not explicit, but we infer that at least 11 were so sold. Our attention is not called in briefs of counsel or in argument to any evidence of sales of complainant's heaters to actual users prior to defendant's adoption of its heater and the putting of the same upon the market.

The defendant is a general stove manufacturer at Cleveland, Ohio, having been engaged in business under its present name, either as a firm or as a corporation, since 1893. It has apparently a good business standing and does a large business, although we assume less extensive than complainant's. It has used the name "Champion" as its trade-mark continuously since that organization, except during the first few months. Soon after complainant began such manufacture and delivery to dealers of its "Solar Acorn," the defendant brought out a natural-gas heater called the "Champion." In so doing it copied complainant's cut, except that it removed the acorn device from the reflector and base of the stove and put the word "Cham-

pion" prominently upon the foot rail, and placed its own name upon the back of the stove in the same location where complainant puts its name upon its stove. Its patterns were prepared directly by the use of parts of one of complainant's "Solar Acorns," the changes referred to as made in the cut being also made in the patterns and in the stove as manufactured, except that as actually put put out the letter "C" appeared conspicuously upon the reflector in place of complainant's acorn. Defendant has invariably manufactured the heater in the dress stated, excepted that in the case of heaters manufactured for three special dealers, who desired distinctive names, the words "Iron City," "Crown," or "Comfort," were placed upon the foot rails of the respective stoves, in each case, however, the letter "C" being prominently shown in the scrollwork of the reflector, complainant's trade-mark and trade-name being likewise absent, and defendant's name being upon the back of the stove in the usual place therefor. The defendant completed its heater and put the same upon the market in February, 1906, publicly exhibiting the same at the Ohio Hardware Dealers' Convention at Canton, Ohio, the latter part of that month. It got out for that convention 20,000 descriptive circulars (five times as many as complainant had issued up to that time) advertising its heaters, part of which circulars were distributed at the convention, the remainder being sent out through the mail to other dealers and salesmen. Complainant had no exhibit of natural-gas heaters at the Canton convention, but had a representative thereat. Defendant exhibited this stove at the Ohio state and county fairs during the year 1906. "Right after the convention or at the convention" defendant's salesmen took orders for its heater, and immediately thereafter salesmen were sent out through the territory, deliveries being begun in July, 1906, the record showing that but a small proportion of the deliveries in the natural-gas heater trade are made in any year between January and July. Following the Hardware Dealers' Convention in February, 1906, and throughout that year, new circulars and advertising matter to the number of many thousand copies were circulated by defendant, which has since carried on its advertising in trade papers, catalogues, circulars, and to some extent in local newspapers, its advertising having been much more extensive than that of complainant. The complainant's sales in Ohio increased in 1906, dropping off after that time. In Kansas and Missouri, sales increased during 1907 over 1906. In the eastern territory sales increased through 1907, dropping off after that year. The evidence indicates that this falling off of sales of complainant's heater is due in large part to defendant's active competition. This suit was begun in January, 1909.

The late Judge Tayler, who heard this case in the Circuit Court, in the course of his opinion dismissing the bill, said:

"It is perfectly apparent that these are the salient and influencing facts in this case: That late in 1905 the complainant brought out this 'Solar Acorn' stove in controversy, having previously advertised it by circulars sent to dealers. They sold a small number in the fall of that year. Some time in the winter of that year defendant took complainant's stove apart, and, except for the acorn and other marks which indicated the origin, absolutely

copied at least the external parts of the stove in every particular, so that, to look at it, it was an exact duplicate of the stove made and designed by complainant, with the descriptive exceptions referred to. At that time it is perfectly obvious that the 'Solar Acorn' gas heater had no reputation whatever. It had established no market. It was the expression of the idea of complainant as to the form which that type of gas stove should take. The defendant appropriated the design. Whatever may be said of the ethics of this act, the effect of this appropriation was not to deceive the public, for the public had no knowledge. It was not to affect the good will of the complainant, for the complainant had no good will established in respect to this stove. The defendant simply saw that somebody else had made something which it thought was good, and which was not protected by trade-mark or patent, and which the public had no general knowledge of and proceeded to make an article like it, taking off from it the characteristic designations which complainant used and putting on its own. Now, who could be deceived by any such operation as that? Certainly not the dealers, for they knew from whom they bought the stoves; certainly not the public, for the public did not know the stoves. In a word, the gist of the offense of unfair competition, to wit, the selling of the imitating thing as the imitated thing, does not exist in this case at all."

Judge Tayler was also of opinion that complainant's right of action was barred by laches, in failing for nearly three years to take action, while defendant was actively building up its own trade.

We do not find it necessary to pass upon the question of complainant's alleged laches, for in view of the lack of public reputation and popularity of complainant's heater, and even of any substantial knowledge, on the part of the using and purchasing public, of its existence, we agree with Judge Tayler that the copying by defendant of complainant's design of ornamentation did not deceive the public, by enabling the defendant to palm off its heater as that made by complainant. The latter has no patent upon either the method of construction or operation of the heater, nor upon its design with respect to ornamentation or otherwise. This action is not for infringement of trade-mark, for no trade-mark is infringed. Nor is it for pirating a trade-name, for complainant's trade-name is not used. This action is simply and solely for alleged unfair competition in the use of the special features of ornamental dress to which attention has been called.

The rule is well settled that nothing less than conduct tending to pass off one man's merchandise or business as that of another will constitute unfair competition. In Goodyear Co. v. Goodyear Rubber Co., 128 U. S. 598, 604, 9 Sup. Ct. 166, 168, 32 L. Ed. 535, Justice Field said:

"The case at bar cannot be sustained as one to restrain unfair trade. Relief in such cases is granted only where the defendant, by his marks. signs, labels, or in other ways, represents to the public that the goods sold by him are those manufactured or produced by the plaintiff, thus palming off his goods for those of a different manufacturer, to the injury of the plaintiff. McLean v. Fleming, 96 U. S. 245 [24 L. Ed. 828]; Sawyer v. Horn [C. C.] 4 Hughes, 239 [1 Fed. 24]; Perry v. Trufitt, 6 Beav. 66; Croft v. Day, 7 Beav. 84."

In Howe Scale Co. v. Wykcoff, Seamans & Benedict, 198 U. S. 118, 140, 25 Sup. Ct. 609, 614, 49 L. Ed. 972, Chief Justice Fuller said:

"The essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another, and, if defendant so conducts its business as not to palm off its goods as those of complainant, the action fails."

In American Washboard Co. v. Saginaw Mfg. Co., 103 Fed. 281, 43 C. C. A. 233, 50 L. R. A. 609, it was held by this court in an opinion by Judge (now Mr. Justice) Day that the fact even that the defendant deceives the public as to his goods by fraudulent means does not give a right of action unless it results in the sale of such goods as those of the complainant.

In Newcomer & Lewis v. Scriven, 168 Fed. 621, 94 C. C. A. 77, in which were involved alleged infringements' of trade-marks and trade-name, as well as unfair competition, although it appeared that a certain advertisement was calculated to mislead a customer into believing that the product of defendant was that of complainant, this court, speaking through Judge (now Mr. Justice) Lurton, held that, as it was not shown "that any customer was misled into buying garments as made or sold by the Scriven Company which were made by others," no right of action in that regard existed.

The rule we have stated is recognized by numerous authorities, but those we have cited are sufficient for the purpose. So far as concerns the ornamental dress of the stove, it is clear that, as complainant had no patent on the design, it had no monopoly thereof, and that any one was free to copy it so long as he did not attempt thereby to palm off his goods as those of complainant, and took due care to guard against any deception of the public into buying in the belief that it is purchasing complainant's goods. Fairbanks v. Jacobus, 14 Blatchf. 337, Fed. Cas. No. 4,608; Dover Stamping Co. v. Fellows, 163 Mass. 191, 40 N. E. 105, 28 L. R. A. 448, 47 Am. St. Rep. 448; Flagg Manf'g Co. v. Holloway, 178 Mass. 83, 59 N. E. 667; Heide v. Wallace & Co. (3d Circuit) 135 Fed. 346, 68 C. C. A. 16; Saxlehner v. Wagner, 216 U. S. 375, 30 Sup. Ct. 298, 54 L. Ed. 525. And it results from this principle that the adoption by one manufacturer of the characteristic features of another's product, common to articles of that class, does not of itself amount to unfair competition. Globe-Wernicke Co. v. Macey Co. (6th Circuit) 119 Fed. 696, 56 C. C. A. 304; Warren Co. v. American Co. (7th Circuit) 141 Fed. 513, 72 C. C. A. 571; Computing Scale Co. v. Standard, etc., Scale Co. (6th Circuit) 118 Fed. 965, 971, 55 C. C. A. 439.

Complainant insists, however, that the unnecessary imitation by one manufacturer of the nonfunctional parts of the product of a competitor, to the extent that the two articles are substantially identical in appearance to a casual observer, and retail purchasers are thus likely to mistake one for the other, is chargeable with unfair competition, although each feature taken separately may have been open to appropriation, as announced in certain authorities, including three cases decided by the United States Circuit Court of Appeals for the Second Circuit. Enterprise Mfg. Co. v. Landers, 131 Fed. 240, 65 C. C. A. 587; Yale, etc., Mfg. Co. v. Alder, 154 Fed. 37, 83 C. C. A. 149; Rushmore v. Manhattan, etc., Works, 163 Fed. 939,

90 C. C. A. 299, 19 L. R. A. (N. S.) 269. We are not called upon to determine the correctness of the rule thus stated as applied to appropriate facts. We content ourselves with saying that in our opinion it can have no application to the facts of this case, for the reason that, upon the record before us, taking into account the lack of public knowledge and reputation of complainant's heater in question, the absence of complainant's trade-mark and trade-name, and the fact, as shown, we think, by the preponderance of the proof, that purchasers more often identify stoves by their name or the name of the manufacturer, or both, than by appearance merely; that all of complainant's natural-gas heaters, including even its cheap products, have the acorn device prominently upon the front and are all advertised in catalogues under the name of "Acorn," in connection with the comparatively minor variations in the general appearance of the stove, including the style of ornamentation, from that of stoves theretofore upon the market, the retail purchaser exercising reasonable care could not well have been deceived into the belief that in buying defendant's heater he was purchasing complainant's stove.

It is further urged that in trade-mark cases the right to protection does not depend upon any particular period of usage, but that, once adopted in good faith and used, the right thereto will prevail against any subsequent user, although no public reputation or notoriety has been acquired; that the right of protection against infringement of trade-marks and unfair competition respectively rest upon the same basis; and that, therefore, the rule in trade-mark cases, as stated, controls this case.

But, whether or not the rule in trade-mark cases is as stated (a question we are not now required to consider), the case before us is not a trade-mark or a trade-name case, but one of alleged unfair competition, predicated upon the simulating of the dress of a competitor's product. And in such case it is clear that identification in the mind of the purchaser of such distinctive dress, as belonging to the complaining manufacturer, is necessary, and that such identification cannot well exist in the absence of knowledge or reputation of such characteristic dress.

In this connection it is urged that complainant's good will and reputation connected with its general line of goods attached to the heater in question immediately upon its being placed upon the market. But if we have correctly reached the conclusion that complainant's heater had acquired no appreciable public knowledge or reputation, and the dress of the heater was not identified in the public mind as the complainant's product, the suggestion loses point.

[2] There is some evidence tending to show an actual deception of customers on the part of dealers by representing defendant's heater as that of complainant. It also appears that on the inside of some of the castings of defendant's heater, due to the use of parts of complainant's heater as patterns, the letters "A" and "Sol. A" are found, and that this fact would enable a dishonest dealer to misrepresent defendant's heater as a "Solar Acorn." This last consideration does not impress us as important, and there is no evidence of actual deception thereby. So far as concerns actual misrepresen-

tation by dealers of the identity of heaters, not only is the proof thereof not highly convincing, but defendant is not responsible for the fact that tricky retailers represent its manufacture as that of complainant, knowing better, provided defendant has done its legal duty in distinguishing its own product from that of complainant. Royal Baking Powder Co. v. Royal, 122 Fed. 345, 58 C. C. A. 499; Hall's Safe Co. v. Herring, etc., Co., 146 Fed. 43, 76 C. C. A. 495, 14 L. R. A. (N. S.) 1182.

We have no doubt that sales of complainant's heater have been materially lessened through defendant's competition. The effectiveness of this competition, in our judgment, has resulted from the activity with which defendant has pushed its heater, the publicity and extent of defendant's exhibitions and advertising, the advantage which the defendant has, especially in the large and valuable district of Ohio, in being a local manufacturer; and to complainant's advance of prices for 1907, before which time the prices of the two competing heaters were substantially the same. This competition was legitimate.

[3] Our conclusion, then, in substance, is that complainant has failed to establish a case of unfair competition, for lack of proof that defendant has palmed off its goods upon the public as the goods of complainant. In our opinion, defendant's intent, as shown by the record, in copying complainant's cut and patterns, was not to derive a benefit from complainant's name and reputation, but to avail itself of a design which, by imitating it, defendant has confessed is attractive and desirable. Defendant's intent is, of course, not material where the necessary result of the act is to commit legal wrong. But, where neither such natural result nor such actual intent exists, unfair competition is not made out. Royal Baking Powder Co. v. Royal, 122 Fed. 345, 58 C. C. A. 499; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 549, 551, 11 Sup. Ct. 396, 34 L. Ed. 997; Globe-Wernicke Co. v. Fred Macey Co., 119 Fed. 703–704, 56 C. C. A. 304.

We do not think that the fact that defendant entered the extreme western territory after complainant's goods had been introduced there justifies a differentiating of that particular territory from the remaining portions of it or from the territory as a whole.

For the reasons stated, the decree of the Circuit Court should be affirmed.