## TROY WAGON WORKS CO. v. OHIO TRAILER CO.

(District Court, N. D. Ohio, E. D.   March 12, 1920.)

No. 492.

1. Patents ⬅➡36—Commercial success of design differing from patented construction due to growth of industry does not aid patent.

The commercial success of complainant's motor truck trailers does not aid the validity and scope of its patent, where most of the trucks sold differed from the construction shown by the patent, and the success was largely due to the general growth of the industry.

2. Patents ⬅➡27(2)—Adaptation of automobile steering apparatus to truck trailer does not disclose invention.

The motor truck trailer art is so closely analogous to the automobile art that the adaptation of the steering apparatus developed in the latter art to the steering of truck trailers is not invention.

3. Patents ⬅➡328—Patent for steering apparatus of truck trailer held not infringed.

The Eccard and Smith patent, No. 1,117,944, claims 1, 2, and 11, for steering apparatus for truck trailers, when limited to the particular construction shown, as they must be to avoid invalidity, held not infringed.

4. Trade-marks and trade-names ⬅➡70(1)—Similarity of appearance of articles sold as defendant's own product does not show unfair competition.

Where defendant, both in its advertising and in the marking of its truck trailers, claimed them as its own product, similarity in appearance to plaintiff's trailer, though due to copy, is not unfair competition.

In Equity.   Suit to restrain infringement of patent by the Troy Wagon Works Company against the Ohio Trailer Company.   Bill dismissed.

Toulmin & Toulmin, of Dayton, Ohio, for plaintiff.

G. E. Dunstan, of Cleveland, Ohio, and Miller, Chindall & Parker, of Chicago, Ill. (Lincoln B. Smith, of Chicago, Ill., of counsel), for defendant.

WESTENHAVER, District Judge.   Plaintiff's bill charges infringement by defendant of United States letters patent No. 1,117,944, issued November 17, 1914, to John F. Eccard and Jacob Smith, and by them assigned to the plaintiff.   Claims 1, 2, and 11 only are in issue.   The bill also contains certain additional charges in the nature of unfair competition in aggravation of the infringement.   The defenses are:  (a) That these three claims are invalid for lack of novelty and lack of invention; and (b) that, if valid, they must be limited to the specific construction as described in the patent, and (c) that, thus construed, defendant's construction does not infringe.

Plaintiff's invention, the patent states, relates to improvements in reversible trucks, more particularly trucks or wagons designed to be drawn by motor vehicles, and in which springs are employed between the bed and the axle.   The particular invention has to do with the means of compensation for the various movements incident to the mounting of the truck bed upon resilient springs.   Trailer trucks, with a drawbar serving the purpose both of a draft bar and a steering lever, is an old article of commerce.   However, with the growth and

development of the self-propelled motor truck, a new form of construction in trailer trucks has been developed. In this new form, designed to travel at a high rate of speed, it has become desirable, if not necessary, to mount the bed carrying the load upon the springs resting upon the chassis or axle, and to attach the draft bar to the bed, instead of to the axle. In this type the constructions well known and long used in standard automobile construction have been adopted; particularly springs interposed between the bed and axle, and supported in any standard way, the common form of automobile axle consisting of a rigid center bar forked at each end, stud axles pivoted in these forked ends and designed to steer or turn independently, short steering arms attached to the stud axles and projecting therefrom, usually at an inclined angle, and a transverse member, called in technical language a drag link, connecting the two ends of the projecting steering arms. In automobile construction the steering lever is connected in some manner with the transverse drag link, and the steering is accomplished by turning the steering lever, which turns the wheels in the desired direction. In trailer truck construction the drawbar performs the same function as the steering wheel and lever of an automobile.

Plaintiff's patent (page 2, lines 5–11) says:

"This draft bar is common in vehicles of this character, but the manner of connecting the frame with the steering member 5 and with the main frame and draft appliances, as the case may be, are the novel features of these improvements."

The inventor's problem, it is said, consisted in so constructing and connecting the 'drawbar that the steering member is to compensate certain movements. It is said there is—

"considerable relative movement between the bed of the truck and the ends of the axle and guide connections by reason of the necessity of taking care of the vertical, longitudinal, swinging, and torsional movements of the draft bar in relation to its connection to the wheels."

The rise and fall of the bed upon the springs produces a vertical movement, the unequal rising or falling of the wheels produces a torsional movement, and the lengthening or shortening of the springs produces a longitudinal movement. Of these several movements the one of greatest importance, and perhaps the only one presenting a real difficulty, is the vertical movement. The swinging movement means nothing except the movement from side to side of the draft bar.

The problem of providing means of compensation for these movements, particularly the vertical movement, was fully considered by automobile engineers, and was solved by them as will be presently stated. Eccard and Smith, by their invention, attempted the solution in the manner now to be described. The steering member or drag link is bifurcated at its central portion, preferably by interposing in the central portion a rectangular frame or yoke. The ends of this transverse steering member are pivotally connected with the steering arms of the stud axle. The rectangular yoke is swivelly connected with the bifurcated portion of the transverse member, and through this rectangular yoke projects the draft bar. The draft bar is formed of an I-beam or other shape, and its sides at that point where it passes through

the rectangular yoke are provided with hardened rounded plates, fitted snugly between certain other hardened plates on the inside of the rectangular yoke. A substantial space is left in this yoke to permit the free up and down movement therein of the draft bar, as the body frame to which the draft bar is pivoted rises and falls. This is designed to take care of the vertical movement. As torsional movement takes place in the draft bar, due to the possible alternate action of opposite springs or other causes, the rounded plates or shoes on each side of the draft bar will rock upon the hardened plates in the rectangular yoke. This, it is said, takes care of the torsional movement. It will also be seen that the connection between the frame-supported draft bar and the transverse steering member or drag link is such that the draft bar and connecting member may also have a swinging movement and thus steer the trailer truck. Such, in brief, is the specific construction illustrated and described in the patent drawings and specifications.

Defendant's construction differs from this in certain respects; but these differences, plaintiff contends, are only mechanical equivalents and do not avoid infringement. Defendant does not use the bifurcated transverse member or drag link, nor a rectangular yoke pivoted therein, nor a drawbar with hardened rounded plates on each side thereof passing through this rectangular yoke, nor a space provided therein to permit an up and down movement of the drawbar in this yoke. Defendant's construction is what is known as the double drag link type. Instead of a single transverse steering member connecting the steering arms of the stud axle, there are two transverse steering members or drag links, each independently connected with the drawbar and with the steering arms. The means of compensation provided for vertical, torsional, and longitudinal movements are ball and socket joints at all connections of the drag links, either with the drawbar or the steering arms. Plaintiff contends that these are loose connections within the meaning of claims 1, 2, and 11.

The solution of this problem requires a brief examination of the prior art. In standard automobile construction the body is mounted upon resilient springs of like character and with similar means of supporting them on the chassis or axle. Stud axles pivoted to a forked rigid center axle, steering arms connected to the stud axles, and both single and double drag link connections are old and well known in the automobile art. As already stated, the problem of compensating for vertical, torsional, and longitudinal movement, particularly vertical movement, was early presented to and solved by automobile engineers. Obviously a steering wheel and column mounted upon a spring-supported frame, and a connection therefrom with a transverse steering member or drag link, would be broken by the several movements resulting from spring action, unless means of compensation were provided in some way. In James E. Homan's treatise entitled "Self-propelled Vehicles" (5th Ed., 1909) p. 60, it is said:

"Ball joints between the drag link and the arms at either end enable it to compensate the up and down motion of the springs."

It is obvious that this form of connection would equally compensate such torsional and longitudinal movement as was present due to the same causes. Again at page 68 he says:

"Some automobiles include spring compensating devices for the steering gear, although with modern forms of hand wheel a link swung between ball joints is amply sufficient."

The link referred to, as other passages show, is either a single or double drag link, or may be an additional floating link, interposed between the steering column and the transverse drag link. Various patents also disclose this method of compensation. See United States letters patent No. 801,521, issued October 10, 1905, to J. O. Haas, third page, lines 16 to 48; No. 845,106, issued February 26, 1907, to H. B. Maxim, Figs. 2 and 3, lines 7 to 33, page 3; No. 810,673, issued January 23, 1906, to F. B. Rae, page 1, lines 23 to 41, 92 to 100; No. 723,975, issued March 31, 1903, to A. A. Ball, Jr. The Haas patent is an example in which the construction consists of a single drag link, and the other three are examples in which the construction consists of a double drag link, all using the ball and socket joint connection for compensation. In the double drag link type the steering lever is connected in the center, as is the drawbar of both trailers now under consideration.

Defendant's construction is obviously more or less of an adaptation of this standard form of automobile construction. The only problem presented in adopting these forms to a trailer truck consists, it seems to me, is the different method of steering control. In the standard automobile the power is applied to the rear wheels, and the front wheels are used only for steering. In the trailer truck, the power is furnished by the self-propelled lead truck. In the standard automobile a driver at the wheel controls the steering and aids in keeping the front or steering wheels headed at all times in the right direction. Originally the driver, unaided by mechanical devices, was relied on to guard against what in technical language is called reversibility; that is, interference by obstacles acting on the road wheels. But later various mechanical devices, particularly a screw and sliding nut device, or a worm with teeth sector, or a combination of the two, were devised to render steering irreversible. In steering a truck with a drawbar, the steering mechanism must work without any assistance from the driver; but otherwise the problems, it seems to me, are identical, and that no invention is involved in transferring a means of compensation from the self-propelled automobile to the motor-drawn truck.

Plaintiff's construction operates on the principle of a single drag link connection between two steering arms. The evidence shows that a single drag link construction in a trailer truck has one marked disadvantage. Any movement imparted to this drag link moves both steering wheels in the same direction at the same time. This is perhaps the most desirable result to be obtained in self-propelled vehicles controlled by a driver, with the added mechanism to prevent reversibility and to absorb shock or vibration. In a trailer, however, it causes the trailer to follow the lead truck in a slightly serpentine or sinuous movement; in other words, it does not track perfectly with the lead

truck. The double drag link type of construction, however, such as defendant uses, operates in just the reverse way. Each wheel being independently mounted, and each drag link being separately connected with the drawbar and the steering arm, any motion imparted to the drawbar will cause the wheels to move in opposite directions; that is to say, any shortening or lengthening of the drag links, due to the rising or falling of the drawbar with the body frame, causes the steering arms to turn in opposite directions at the same time, instead of in the same direction. The result of this method of construction is to overcome the tendency of the trailer to travel in a serpentine path and to aid in holding the steering wheels on a straight line. The tendency to serpentine movement is perhaps not entirely overcome, but is sufficiently so for practical commercial purposes. This method of construction, however, has the disadvantage of dragging the wheels, and thus perhaps shortening the life of tires by the enhanced wear and tear.

[1] Plaintiff manufactured and sold only 125 trailer trucks conforming to the specific construction illustrated and described in its patent. The dates between which they were made and sold are not clearly shown, but it seems to have covered a period of several years. Plaintiff discovered, shortly after beginning to make them, that the specific construction of the patent was not as efficient or satisfactory as it could be made. It departed therefrom immediately, and has since made and sold trucks having either a single or double drag link, with ball and socket connections as the compensating means. Plaintiff's large sales and the commercial success of its trailer, on which is based the usual arguments, are of these later types. Furthermore, these sales are due to the growth of industry and trade conditions, and in no wise to the specific contribution, if any, to the trailer truck art of Eccard and Smith's alleged invention. In other words, the validity of plaintiff's patent and the scope of its claims, are in no wise aided by such commercial success as it is shown plaintiff's truck has had.

[2] Claims 1, 2, and 11 now in issue are the broad claims of the patent. The specific construction illustrated and described in the drawings and specifications is covered by other claims, particularly claims 6 and 7. Plaintiff contends, however, that the elements, "transverse steering member" connecting with said wheels and "a loose connection between said draft bar and said transverse member," called for in each of the three claims in issue, are broad enough to include defendant's double drag link and ball and socket joint type of construction. These claims and this language must be construed both in the light of the drawings and specifications and in the light of the prior automobile art. It does not seem probable that, by the expressions "transverse steering member" or "loose connection," the inventor had in mind the familiar single or double drag link and ball and socket joint type of construction. These were familiar and well-known compensating devices, old in the automobile art and fully disclosed in prior patents. He must have had in mind something else. If he intended to include these in his claims, then he has appropriated a part of the old automobile art, and in my opinion the automobile and

trailer truck art are not merely analogous, but are precisely the same, and invention cannot be based upon an appropriation of standard devices and means of compensation well known and long used in the automobile art. The ball and socket joint, as a compensating means, performs the same function in the same way in the trailer truck as it does in the automobile.

[3] The result would be, if plaintiff's contention is sustained, that claims 1, 2, and 11 should be held invalid. Giving these claims such a broad construction would include therein a prior art not subject to appropriation. My view is that these claims must be limited to the specific construction described and illustrated in the drawings and specifications. The transverse member and the loose connection referred to in the claims must be held to be a transverse member and a loose connection of the specific type therein shown.

Whether claims 1, 2, and 11, as thus understood and construed, are valid or not, it becomes unnecessary to inquire. Defendant's construction clearly does not infringe. The differences between the two have already been sufficiently stated. It is sufficient to say that defendant uses different means, operating in a different manner, and producing in part a different result.

[4] Plaintiff, in its bill, sets up certain matters of alleged unfair competition in aggravation of the infringement. No infringement being shown, there is nothing to aggravate. However, treating these allegations and all that is brought forward in support as a charge of unfair competition or trade practice, I am of the opinion that the charge is not sustained. It is not shown that defendant has attempted to sell or palm off upon the public its trailers as the product of the plaintiff, or that any confusion has resulted among the purchasing public. Defendant has, both in its advertising and in the marking of its trailers, persistently and vociferously claimed and represented the product to be its own, and has not in any manner failed to mark adequately its own trailer, so as to distinguish it clearly to all intending purchasers. Such similarities as in appearance exists, even if found to be due to copying, furnish no ground for legal relief. In this aspect, Rathbone-Sard & Co. v. Champion Steel Range Co. (6 C. C. A.) 189 Fed. 26, 110 C. C. A. 596, 37 L. R. A. (N. S.) 258, is a controlling authority.

Plaintiff's bill will be dismissed, at its cost.